# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON FREDERIC NELSON, | 1:06cv0107 DLB |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (Document 40) |
| INYO COUNTY SHERIFFS DEPARTMENT, et al., | |
| Defendants. | |

Defendant City of Bishop ("City") filed its motion for summary judgment on August 1, 2007. Defendant County of Inyo ("County") joined in the motion on August 8, 2007. The motion was heard on August 31, 2007, before the Honorable Dennis L. Beck, United States Magistrate Judge. Plaintiff Jon Nelson ("Plaintiff") is appearing pro se and appeared on his own behalf. Jonathan D. Holub appeared on behalf of the City and John D. Kirby appeared on behalf of the County.

## **BACKGROUND**

Plaintiff, appearing pro se and proceeding in forma pauperis, filed this civil rights action on February 2, 2006. He names the Inyo County Sheriffs Department and Bishop Police Department as Defendants[1] and alleges that his "civil rights" were violated after his arrest on

---

[1] Plaintiff also named the United States District Court as a Defendant, but the parties stipulated to dismissing the Court at the April 4, 2007, scheduling conference before the Honorable Lawrence J. O'Neill. The parties also agreed to consent to jurisdiction of United State Magistrate Judge Dennis L. Beck, and the case was

1

March 8, 2004.  The City answered on behalf of the Bishop Police Department on March 28, 2006, and the County answered on behalf of the Inyo County Sheriffs Department on July 18, 2006.

On August 1, 2007, the City filed its motion for summary judgment.  The County joined in the motion on August 8, 2007.

Also on August 1, 2007, the City filed a motion for terminating sanctions.  The County joined in the motion on August 8, 2007.  Plaintiff filed an opposition on August 28, 2007.

## **ALLEGATIONS OF THE COMPLAINT**

According to the complaint, Plaintiff was arrested on March 8, 2004, and was held at the Inyo County Jail from March 9, 2004, through March 18, 2004, on a domestic violence charge.  On June 30, 2004, the charges against him were dismissed for lack of evidence.

He alleges that his civil rights were violated because he spent 10 days in the Inyo County Jail "under false arrest and false incarceration."  Complaint, at 1.  He contends that he deserves an explanation as to why he was taken from his home, rather than the alleged victim, because the victim was drunk and in violation of her probation.  He further contends that the City acted "too hasty" and did not give him "equal opportunity" to explain himself.  Complaint, at 2.  He denies that he ever harmed the victim in any way.  Finally, he argues that he was "put through 3 ½ months of humiliation meeting Court dates on time and finally freed with the Court dropping the case."  Complaint, at 2.

Plaintiff requests compensation for the jail time and humiliation and asks for a minimum of $1,000 for each day he was jailed (10 days) and additional punitive damages.

## **UNDISPUTED FACTS[2]**

On March 8, 2004, at 11:45 p.m., Bishop Police Officers Kris Nelsen and Doug Mairs

---

reassigned on April 19, 2007.

[2] Although Plaintiff filed an opposition, he did not submit any disputed facts and admitted at hearing on the motion that he could not dispute Officer Maris' declaration as to what he was told by Jeanne Brockman and Ruben Alvara.

were dispatched to the J-Diamond Trailer Park to investigate a report of domestic violence. Declaration of Doug Mairs ("Mairs Dec."), ¶ 5, Exhibit A. Upon arrival, Officer Mairs spoke with Ruben Alvara, who informed him that "Jeanne" was inside Alvara's trailer and that "John" had assaulted her. Mairs Dec., ¶ 7. Officer Mairs then made contact with Jeanne Brockman, who stated, "John beat me." He also observed that she had blood in her hair above her right ear, that her bottom lip was blue and swollen, and that she had two lacerations to the left side of her face. Mairs Dec., ¶ 8.

Officer Mairs next made contact with Plaintiff, who stated that he and Brockman were inside his trailer and that Brockman went to the bathroom. Mairs Dec., ¶ 9. Plaintiff stated that moments later, he heard Brockman screaming outside his trailer and he went outside and told her to be quiet and "dragged" her back to his trailer. Mairs Dec., ¶ 9.

Based upon his training and experience as a police officer, his observations of the parties, and witness statements, Officer Mairs determined that there was probable cause to arrest Plaintiff for the crime of domestic violence pursuant to California Penal Code section 273.5. Mairs Dec., ¶ 10. He arrested Plaintiff and transported him to the station, along with Alvara and Brockman. Mairs Dec., ¶¶ 11, 12.

At the station, Brockman told Officer Mairs that she and Plaintiff had been dating for approximately two years and had lived together for approximately one month. Exhibit A, attached to Mairs Dec. She was also crying and complained of wrist pain. Mairs Dec., ¶ 13. She told Officer Mairs that Plaintiff grabbed her with his left hand on her throat and his right hand on her wrist, and stated, "I'll break your fucking hands." Mairs Dec., ¶ 13. Brockman further stated that Plaintiff twisted her left wrist backwards, causing pain, and ran his fingernails over her face, causing lacerations. Mairs Dec., ¶ 13.

Alvara told Officer Mairs that he heard Plaintiff yelling, "You Bitch, get out of here!" in addition to a lot of "banging around" as if someone was getting "pushed around." Mairs Dec., ¶ 14, Exhibit A.

1   Based on his investigation, Officer Mairs referred the matter to the Inyo County District
2   Attorney's office. Mairs Dec., ¶ 15. He also issued an Emergency Protective Order against
3   Plaintiff as to Jeanne Brockman. Mairs Dec., ¶ 20.
4   Deputy District Attorney Bryan Kim filed a misdemeanor complaint against Plaintiff for
5   violation of California Penal Code section 273.5(a) on March 10, 2004. Declaration of Mark
6   Johnson ("Johnson Dec."), ¶ 3; Exhibit A, attached to Request for Judicial Notice ("RJN") and
7   Declaration of Jonathan D. Holub in Support of Summary Judgment, ("Holub MSJ Dec.").
8   Plaintiff's bail was set at $10,000. Exhibit B, attached to RJN and Holub Dec. He was released
9   on his own recognizance on March 18, 2004. Exhibit C, attached to RJN and Holub MSJ Dec.
10  The charges against Plaintiff were eventually dismissed because Brockman's whereabouts
11  became unknown. Johnson Dec., ¶¶ 6, 7.

## DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)). As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1109 (9th Cir.1999).

B.   Analysis

    1.   Existence of Probable Cause

First, Defendants contend that Officers Mairs and Nelsen had probable cause to arrest Plaintiff on March 8, 2004.  Probable cause is established if, at the time the arrest is made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Moreover, "[l]aw enforcement officers may draw upon their experience and expertise in determining the existence of probable cause." Id., citing United States v. Garza, 980 F.2d 546, 550 (9th Cir.1992)).

The undisputed evidence shows that the Officers received a report of domestic violence. Upon arriving at the scene, they observed signs of physical battery and obtained verbal testimony both from the victim and a witness. Officer Mairs spoke with Alvara, who informed him that "Jeanne" was inside Alvara's trailer and that "John" had assaulted her. Mairs Dec., ¶ 7. Officer Mairs then made contact with Brockman, who stated, "John beat me." He also observed that she had blood in her hair above her right ear, that her bottom lip was blue and swollen, and that she had two lacerations to the left side of her face. Mairs Dec., ¶ 8. The victim's injuries were consistent with her interview testimony.

Based on the information presented to the Officers, probable cause existed to arrest Plaintiff.  As explained at the hearing, the relevant issue is whether or not the Officers had probable cause to *arrest* Plaintiff, not whether he actually committed the crime.  At the hearing, Plaintiff repeatedly denied attacking Brockman but admitted that he could not dispute what she told Officer Mairs because he was not present during the conversation.  Similarly, Plaintiff's argument as to the victim's intoxicated state and whether he was given "equal opportunity" to explain himself are irrelevant to the probable cause determination.

2.     <u>Monell</u> Liability

Even assuming that Plaintiff can establish a violation, which he cannot, he has sued only municipal entities that cannot be held liable absent <u>Monell</u> allegations. A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978); <u>Webb v. Sloan</u>, 330 F.3d 1158, 1163-64 (9th Cir. 2003); <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1185 (9th Cir. 2002). Rather, a local government unit may only be held liable if it inflicts the injury complained of. <u>Gibson</u>, 290 F.3d at 1185. Generally, a claim against a local government unit for municipal or county liability requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007); <u>City of Canton, Ohio, v. Harris</u>, 489 U.S. 378, 385 (1989). Alternatively, and more difficult to prove, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. <u>Gibson</u> at 1186. Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." <u>Id</u>. Deliberate indifference requires a showing "that the municipality was on actual or constructive notice that its omissions would likely result in a constitutional violation." <u>Id</u>.

Here, even assuming that a constitutional violation occurred, there is no evidence or allegations that Plaintiff was arrested pursuant to an official municipal policy of either the City or the County. In fact, the undisputed disputed evidence shows that the two arresting officers were employees of the City, not the County.

///
///
///
///
///
///

Accordingly, Defendants' motion for summary judgment is GRANTED.[3]  The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff Jon Nelson.  This terminates this action in its entirety.  All pending motions are DENIED AS MOOT.[4]

IT IS SO ORDERED.

Dated:   **September 12, 2007**                         /s/ **Dennis L. Beck**
                                                                              UNITED STATES MAGISTRATE JUDGE

---

[3] Pro se cases are screened prior to service to determine whether the complaint states a claim.  Generally, a plaintiff who names municipal entities without Monell allegations will be given an opportunity to amend the complaint.  Although Plaintiff was not given an opportunity to amend at the screening stage, amendment would have been futile given the undisputed evidence of the existence of probable cause.  For this reason, amendment now would also be futile.

[4] In addition to the motion for summary judgment, Defendants filed a motion for sanctions based on Plaintiff's failure to appear at his deposition.  At the hearing, Plaintiff indicated that he did not appear because he believed that he had already given Defendants sufficient information in his answers to interrogatories.  He also stated that the day for which his deposition was set was not a good day for him and that he was "gone up in the mountains."  Plaintiff admits that he did not communicate with Defendants or attempt to change the date.  This demonstrates his cavalier attitude towards this litigation and although the motion for sanctions is now moot, Plaintiff's failure to attend his deposition was unjustified and inexcusable.